168 S.W.3d 656 (2005)
STATE of Missouri ex rel. Jeremiah W. (Jay) NIXON, Attorney General, State of Missouri, Respondent,
v.
Tony KOONCE, Appellant.
No. WD 64353.
Missouri Court of Appeals, Western District.
May 31, 2005.
*657 Tony Koonce, Bowling Green, pro se.
Jeremiah W. (Jay) Nixon, Atty. Gen., Paul Harper, Assistant Attorney General, Jefferson City, MO, for Respondent.
Before: EDWIN H. SMITH, C.J., and HOLLIGER and HOWARD, JJ.
*658 EDWIN H. SMITH, Chief Judge.
Tony Koonce appeals, pro se, from a judgment of the Circuit Court of Cole County in favor of the respondent, the State of Missouri, on its petition for reimbursement, pursuant to the Missouri Incarceration Reimbursement Act (MIRA), §§ 217.825-.841,[1] for the costs of his incarceration in the Missouri Department of Corrections (DOC). The appellant was convicted in 1986, in the Circuit Court of the City of St. Louis, of two counts of forcible rape, one count of forcible sodomy, and one count of attempting to commit forcible sodomy. He was sentenced to serve concurrent prison terms of thirty years on each count in the DOC, which sentences he began serving in 1986.
The appellant raises three points on appeal. In Point I, he claims that the trial court erred in entering judgment in favor of the State on its MIRA petition because the court lacked personal jurisdiction due to insufficient service of process, in accordance with § 217.835.2. In Point II, he claims that the trial court erred in entering judgment in favor of the State on its MIRA petition because it violated § 217.831.3, which requires a threshold amount that must be available for the recovery of incarceration expenses before the Attorney General can file a MIRA petition. In Point III, he claims that the trial court erred in ordering him to pay the full filing fee for this appeal because it violated § 506.369, which limits an inmate's filing fee to a partial assessment based on the activity of his correctional center account for a six-month period preceding the filing of the appeal.
We affirm.

Facts
On January 31, 1986, the appellant was ordered to serve, pursuant to his convictions of two counts of forcible rape, one count of forcible sodomy, and one count of attempting to commit forcible sodomy, concurrent prison terms of thirty years on each count in the DOC. He is currently serving those sentences, which commenced in 1986, at the Northeast Correctional Center in Bowling Green, Missouri.
On December 5, 2003, the State filed, in the Circuit Court of Cole County, a MIRA petition seeking reimbursement for the appellant's cost of incarceration. The appellant was served with the petition by certified mail, addressed to him personally. The petition alleged that the State expends approximately $13,000 per year for each inmate in the custody of the DOC, and that it had expended, to date, $163,194.81 in incarcerating the appellant. The petition further alleged that the appellant had a balance of $2,199.51 in his correctional center account.
On December 8, 2003, the trial court entered an order directing the appellant to show cause why an order should not be entered appropriating his assets to reimburse the State for the cost of his incarceration and appointing a receiver for the funds in the appellant's inmate account. The order further directed the appellant to respond by February 18, 2004.
On January 12, 2004, the appellant filed a response to the trial court's show cause order. In his response, the appellant claimed that the State was not entitled to reimbursement because the State had failed to comply with the statutory requirements of MIRA. Specifically, he alleged that the State could not seek reimbursement in accordance with MIRA in that the amount in his correctional center account was $2,199.51, which was less than 10% of the estimated costs of two years of *659 incarceration, and less than 10% of the estimated costs of his entire incarceration. The appellant asked the court to dismiss the respondent's petition.
On January 13, 2004, the State filed a "response to defendant's motion to dismiss," alleging that, in addition to the $2,199.51 in the appellant's correctional center account, at the time the petition was filed, the account activity demonstrated consistent monthly deposits of $230 since May of 2003. From this, the State alleged that the appellant had an income stream sufficient to pay, within a five-year period, either ten percent of the estimated costs of the appellant's incarceration, or ten percent of such costs for two years, whichever was less, as required by § 217.831.3.
On February 2, 2004, the appellant filed a supplemental response to the trial court's show cause order, in which he responded to the issues raised by the State in its response. The appellant contended that any allegation of a future income was merely speculative, and that the monthly deposits were gifts from family and friends, which could be discontinued at any time due to economic hardships or other reasons.
On February 18, 2004, the trial court heard the State's petition. On the same date, the court entered a judgment for the State, finding that the appellant had $2,053.28 in his correctional center account, and that ninety percent of that account, or $1,847.96, was subject to reimbursement, under the MIRA. The court ordered the inmate finance officer of the DOC to pay $1,847.96 from the appellant's inmate account into the Inmate Incarceration Reimbursement Act Revolving Fund, established by § 217.841.1. The court also entered judgment against the appellant for reimbursement of future costs of his incarceration.
This appeal followed.

I.
In Point I, the appellant claims that the trial court erred in entering judgment in favor of the State on its MIRA petition because the court lacked personal jurisdiction due to insufficient service of process in that the respondent's petition was not served by registered mail addressed to the chief administrator of the correctional center where he was incarcerated, as required by § 217.835.2. We disagree.
Section 217.835.2 provides, inter alia, that a petition for the reimbursement of incarceration costs "shall be served upon the person personally, or, if the person is confined in a state correctional center, by registered mail addressed to the person in care of the chief administrator of the state correctional center where the person is housed." In this case, even though the appellant was "confined in a correctional center," the petition was mailed to him personally, via certified mail, rather than to the chief administrator of the facility by registered mail. The appellant contends that the trial court's judgment is void because of this failure to comply with the service provisions of § 217.835.2.
The appellant is raising the issue of service of process and personal jurisdiction for the first time on appeal. However, Rule 55.27(g) provides, in pertinent part:
(1) A defense of:
(A) Lack of jurisdiction over the person,
(B) Insufficiency of process,
(C) Insufficiency of service of process
. . .
is waived if it is:

*660 (A) Omitted from a motion in the circumstances described in Rule 55.27(f),[2] or
(B) Neither made by motion under this Rule 55.27 nor included in a responsive pleading.
Thus, the appellant waived his claim that the trial court lacked personal jurisdiction due to the insufficiency of the service of process, as provided in § 217.835.2. See In Interest of J.D.B., 836 S.W.2d 520, 521 (Mo.App.1992); State ex rel. Buffington v. Gaertner, 657 S.W.2d 957, 958 (Mo. banc 1983).
Point denied.

II.
In Point II, the appellant claims that "[t]he trial court erred in granting respondent's Petition for Reimbursement under the Missouri Incarceration Reimbursement Act, Section 217.825 through 217.845, RSMo.2000, in that the state lacked legal authority to grant respondent's petition." The fact that the appellant is proceeding pro se does not excuse him from complying with the briefing requirements of Rule 84. Boyer v. City of Potosi, 77 S.W.3d 62, 68 (Mo.App.2002). Point II fails to substantially comply with Rule 84.04(d), governing proper Points Relied On (PRO).
Rule 84.04(d)(1) provides:
(1) Where the appellate court reviews the decision of a trial court, each point shall:
(A) identify the trial court ruling or action that the appellant challenges;
(B) state concisely the legal reasons for the appellant's claim of reversible error; and
(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.
The point shall be in substantially the following form: "The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error]."
Thus, the rule requires that a proper PRO must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. Lombardo v. Lombardo, 120 S.W.3d 232, 247 (Mo.App.2003). Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. Franklin v. Ventura, 32 S.W.3d 801, 803 (Mo.App.2000). The failure to comply with Rule 84.04(d) warrants dismissal of the appeal. Young v. Ernst, 113 S.W.3d 695, 697 (Mo.App.2003).
The appellant's PRO in Point II fails to explain in summary fashion why, in the context of this case, the legal reason or reasons support the claim of reversible error. His PRO is nothing more than an *661 abstract statement of the law, which is unacceptable in satisfying the requirements of Rule 84.04(d). Lombardo, 120 S.W.3d at 247. This alone would be sufficient to dismiss the appellant's claim of error. Young, 113 S.W.3d at 697. However, we will review a PRO that does not technically comply with Rule 84.04(d), as long as we are able to ascertain the issues being raised to some degree of certainty by reading the PRO in conjunction with the argument thereon and provided that in doing so we are not forced to become an advocate for the appellant, which we cannot do. Loumiet v. Loumiet, 103 S.W.3d 332, 345 (Mo.App.2003).
Reading the appellant's PRO in conjunction with his argument thereon, it is apparent that he is claiming that the trial court's MIRA judgment for the State violated § 217.831.3, which provides that, if the Attorney General:
has good cause to believe that an offender or former offender has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period, the attorney general may seek to secure reimbursement for the expense of the state of Missouri for the cost of care of such offender or former offender.
The appellant contends that, pursuant to this section, a MIRA judgment could not issue against him, unless the State first showed that he had assets subject to MIRA reimbursement, which were sufficient to satisfy the applicable 10% threshold requirement of § 217.831.3, and that the State had failed in that burden. In other words, he is contending that the 10% requirement is a threshold amount that is a condition precedent to a MIRA reimbursement. The State contends, however, that the 10% threshold requirement of § 217.831.3 is not a condition precedent to a MIRA reimbursement, but is simply a condition precedent to the filing of a MIRA petition by the Attorney General. We agree.
In determining the issue presented, we necessarily must interpret § 217.831.3. Statutory interpretation is purely a question of law, which we determine de novo. Pavlica v. Dir. of Revenue, 71 S.W.3d 186, 189 (Mo.App.2002). When interpreting a statute, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning, and give effect to that intent, if possible. State ex rel. Riordan v. Dierker, 956 S.W.2d 258, 260 (Mo. banc 1997). If the intent of the legislature is clear and unambiguous, giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute. Baxley v. Jarred, 91 S.W.3d 192, 196 (Mo.App.2002).
In 1988, the Missouri General Assembly enacted the MIRA, which is found in §§ 217.825 to 217.841. Pursuant to the MIRA, every offender is required to complete a standard form regarding his assets upon being sentenced to imprisonment in the DOC. §§ 217.829.1-3. An "offender" is defined in § 217.827(5) as "any person who is under the jurisdiction of the department and is confined in any state correctional center or is under the continuing jurisdiction of the department[.]" The "department" is the "department of corrections of this state [DOC][.]" § 217.827(3). Pursuant to § 217.831.1, the director of the DOC is required to "forward to the attorney general a report on each offender containing a completed form... together with all other information available on the assets of the offender and an estimate of the total *662 cost of care for that offender." The Attorney General may then investigate or cause to be investigated the forms that have been forwarded. § 217.831.2. And if, upon completing his investigation, the Attorney General has good cause to believe that the offender has sufficient assets to recover at least "ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period," he "may seek to secure reimbursement" for the cost of the offender's care. § 217.831.3.
Pursuant to § 217.835.1, the Attorney General is authorized to:
file a complaint in the circuit court for the county or city from which a prisoner was sentenced or in the circuit court in the county or city of the office of the director of the department, against any person under the jurisdiction of the department stating that the person is or has been an offender in a state correctional center, that there is good cause to believe that the person has assets, and praying that the assets be used to reimburse the state for the expenses incurred or to be incurred, or both, by the state for the cost of care of the person as an offender.
Once a complaint is filed, the circuit court is required to issue an order to show cause why the complaint should not be granted. § 217.835.2. After a hearing on the complaint and order, the court shall order reimbursement to the State, provided: "it appears that the person has any assets which ought to be subjected to the claim of the state pursuant to the provisions of sections 217.825 to 217.841." § 217.835.3 (emphasis added). In claiming as he does, the appellant is asking us to interpret this italicized phrase of the statute as requiring proof of compliance with the 10% threshold requirement of § 217.831.3 for a MIRA judgment to issue.
Section 217.831.3 provides, in pertinent part, that: "the attorney general may seek to secure reimbursement for the expense of the state of Missouri for the cost of care of such offender or former offender." (Emphasis added.) In using the term "may," it is clear that the legislature intended that the Attorney General would have discretion in whether to seek a MIRA reimbursement. Pfefer v. Bd. of Police Comm'rs, 654 S.W.2d 124, 128 (Mo.App.1983) (stating that the use of the word "may" in a statute confers discretion). However, it is also clear that it intended that this discretion would not be unfettered. This is made clear by the "if" language of the statute. Section 217.831.3 begins:

If the attorney general upon completing the investigation under subsection 2 of this section has good cause to believe that an offender or former offender has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period....
(Emphasis added.) The "if" indicates that the Attorney General's discretion in seeking a MIRA reimbursement is predicated on his having a good faith belief that the requisite enumerated conditions of the statute have been met. See Baxley, 91 S.W.3d at 198 (stating that the term "if" signifies a condition precedent). In other words, the legislature intended that the Attorney General's discretion to file a MIRA petition would not vest unless and until the conditions precedent of the statute were met. However, once those conditions are met, it is clear that the legislature intended that he have unfettered *663 discretion whether to file such a petition.
In State Treasurer v. Cuellar, 190 Mich.App. 464, 476 N.W.2d 644, 645 (1991), the Michigan Court of Appeals was called upon to interpret a section of the State Correctional Facility Reimbursement Act, M.S.A. § 28.1701 et seq., the functional equivalent of the MIRA. The court first opined that the Act "was designed to regulate the responsibilities of certain state officials and to provide procedures for securing reimbursement for expenses incurred by the state." We believe that this characterization would accurately describe the purpose of the MIRA. The court was asked to interpret M.S.A. 28.1703(2) of the Act, a similarly worded statute to § 217.831.3. Section 28.1703(2) provided:
If the attorney general ... has good cause to believe that a prisoner has sufficient assets to recover not less than 10% of the estimated cost of care of the prisoner or 10% of the estimated cost of care of the prisoner for 2 years, whichever is less, the attorney general shall seek to secure reimbursement for the expense of the state of Michigan for the cost of care of that prisoner.
(Emphasis added.) Apparently focusing on the term "shall," the Michigan Court of Appeals read the section as providing that the "Attorney General must seek reimbursement when the assets of the prisoner are such that a recovery of not less than ten percent of the cost of care is possible." Cuellar, 476 N.W.2d at 645 (emphasis added). The court, however, determined that the section did not bar the filing of a petition if the threshold amount was not met, leaving that to the discretion of the Attorney General. Id.
Unlike the Michigan statute, § 217.831.3 substitutes "may" for "shall" meaning that in Missouri, if the conditions precedent of § 217.831.3 are met, the Attorney General is not mandated to file a MIRA petition, but that his discretion to do so is triggered. And, conversely, unlike under the Michigan statute, where the Attorney General has discretion as to whether to file a petition if the threshold test is not met, under the Missouri statute, if the conditions precedent are not satisfied, the Attorney General has no authority or discretion to file a MIRA petition. Obviously, by setting forth in the statute the conditions under which the Attorney General has discretion to file a MIRA petition, the legislature intended that unless those conditions were met, he was without authority to act. This would be in keeping with an intent to provide a cost-effective reimbursement procedure  limiting MIRA actions by the Attorney General to cases in which he has a reasonable belief that a recovery of a minimal amount of the cost of care of an offender is possible so as to justify exercising his discretion to file such an action. See Pous v. Dir. of Revenue, 998 S.W.2d 129, 131-32 (Mo.App.1999) (interpreting the phrase, "good cause to believe," in § 302.291, as a reasonable belief that the Director should exercise the discretion granted to her under the statute).
Having determined that the 10% requirement threshold of § 217.831.3 speaks only to the power of the Attorney General to file a MIRA petition, the question becomes, in determining the appellant's claim in this point, whether the language of § 217.835.3, directing when a MIRA judgment may issue, "if it appears that the person has any assets which ought to be subjected to the claim of the state pursuant to the provisions of sections 217.825 to 217.841," can be read, as the appellant is necessarily contending, as requiring that the conditions precedent of § 217.831.3 have to be proven before a judgment may issue. In other words, the question is whether, as the appellant is contending, *664 § 217.831.3, in addition to being a limitation on the Attorney General's authority to file a MIRA petition, is a limitation on the assets of an offender subject to MIRA reimbursement.
We would first note that although § 217.835.3 references the "provisions of sections 217.825 to 217.841," which absent any other qualifying language would include § 217.831.3, that reference is in the context of determining whether the offender "has any assets which ought to be subjected to the claim of the state." Thus, the reference to the "provisions of sections 217.825 to 217.841," in § 217.835.3 cannot be said to mandate the proof of all those provisions for a MIRA judgment to issue. Rather, the reference, in the context given, would be limited to those provisions of the Act addressing the assets that are subject to MIRA reimbursement. In that regard, as we discuss, supra, § 217.831.3, by its express terms, does not deal with what assets of the offender are subject to MIRA reimbursement, but deals solely with the authority of the Attorney General to file a MIRA petition. Hence, the language of § 217.835.3 in question cannot be read, as the appellant necessarily contends, as requiring the State to meet the conditions precedent of § 217.831.3 in determining, in accordance with § 217.835.3, whether he has assets subject to MIRA reimbursement so as to issue a judgment thereon.
Further reason for interpreting § 217.835.3 as not requiring proof that the offender has assets sufficient to satisfy the 10% threshold requirement of § 217.831.3 before a MIRA judgment can issue, can be found in the fact that this requirement, logically, has no relation to the offender's ability to pay, but only to what the State can, at a minimum, expect to recover. As such, it is clear that the legislature intended it as a cost-effective limitation on the Attorney General's authority to seek a MIRA reimbursement. Logically, the legislature did not want the Attorney General expending the State's limited resources in seeking reimbursement without some reasonable expectation of a minimum return. That being said, it would make no sense that at the hearing stage, after the Attorney General has already committed time and money to pursue the action, that the limitation would then be invoked to deny reimbursement, defeating the very purpose of the limitation  to prevent the Attorney General from pursuing offenders from whom there was no reasonable likelihood of a recovery sufficient to justify the State's expenses in pursuing him.
Although not expressly arguing the point, the appellant seems to be suggesting, among other things, by his argued-for interpretation of § 217.831.3 and § 217.835.3, that the 10% threshold requirement of § 217.831.3 is intended as a protection to the offender by limiting the extent to which the State could deplete his assets in recovering the cost of incarceration. Such a suggestion is illogical. The 10% threshold requirement is a function of the cost of incarceration, not an offender's ability to pay. As such, its application, unlike § 217.833, limiting the offender's assets subject to reimbursement to 90%, does not set a minimum as to the assets of the offender that are subject to reimbursement. It is, as we point out, supra, simply a cost-effective measure imposed by the legislature to ensure that the State gets a reasonable return on the monies expended by the Attorney General in seeking MIRA reimbursements.
In light of the foregoing, there is no merit to the appellant's claim that the trial court's MIRA judgment was erroneous in that the record did not support the fact that at the time of the hearing he had sufficient assets to satisfy the 10% threshold requirement of § 217.831.3. The *665 only question that would remain would be whether he had any assets subject to MIRA reimbursement, and the appellant does not challenge that fact. The appellant does not claim that the Attorney General did not satisfy the conditions precedent of § 217.831.3 for filing a MIRA petition so as to void the petition and the subsequent judgment. Even if he had, however, his claim would not be successful.
The parties agree that the appellant, at the time of the filing of the petition, had $2,199.51 in his correctional center account and that, for purposes of the MIRA, the account funds were considered "assets," as defined in § 217.827(1)(a). The parties also agree that, for the purposes of § 217.831.3, the applicable 10% threshold amount for filing would be 10% of the estimated cost of the appellant's care for two years, $2,600 (.10 × $26,000),[3] because $2,600 is less than 10% of the cost of his total care, $16,319.48 (.10 × $163,194.81). Pursuant to § 217.833.1, not more than ninety percent of the appellant's assets could be used for MIRA reimbursement. At the time of the filing of the petition, the appellant's assets consisted solely of his correctional center account, which had a balance of $2,199.51. Hence, applying the 90% limitation, $1,979.56 of the funds in the appellant's account at that time was subject to MIRA reimbursement.[4]
The State concedes that the portion of the appellant's account subject to reimbursement was not sufficient to satisfy the applicable 10% threshold requirement of § 217.831.3. However, it argues that a MIRA filing was still authorized by § 217.831.3 in that it complied with the alternative means test of that statute. In that regard, the State points to the fact that, under § 217.831.3, a MIRA filing is authorized where either the appellant has sufficient assets to meet the applicable 10% threshold amount "or has a stream of income sufficient to pay such amounts within a five-year period." The State argues that the evidence was sufficient for the trial court to find that the Attorney General, as required by § 217.831.3, had a good faith belief, at the time of filing of the MIRA petition, that the appellant had monthly income of $230, which when coupled with the amount available from his correctional center account, was sufficient to reimburse the State, within five years, the applicable 10% threshold amount.
At the time the State's MIRA petition was filed, the appellant's account record reflected, beginning in May of 2003, monthly deposits of $230. The State contends that these deposits constituted a stream of income sufficient to satisfy the requirements of § 217.831.3 for the filing of a MIRA petition. The appellant claims, however, that the monthly deposits were gifts from his family, and, therefore, did not constitute a "stream of income" for the purposes of § 217.831.3, because such gifts could stop being made at any time.
"A stream of income," for purposes of § 217.831.3, is defined in § 217.827(1)(a)c as coming "from any source whatsoever, including a salary, wages, disability, retirement, pension, insurance or annuity benefits or similar payments." Monthly deposits to the appellant's account would qualify as income under this definition. The appellant, however, asks us to find otherwise, *666 arguing on appeal that the deposits were gifts, not income. However, he points to nothing in the record to support his argument. He just asks us on blind faith to accept his argument, substituting our judgment for that of the trial court. We cannot do that. See Midwest Asbestos Abatement Corp. v. Brooks, 90 S.W.3d 480, 485 (Mo.App.2002) (stating that the appellate court must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge).
The appellant is required to furnish a record sufficient to allow us to determine the claims he raises on appeal. Rule 81.12(c); McAllister v. McAllister, 101 S.W.3d 287, 292-93 (Mo.App.2003). The record on appeal is utterly devoid of any evidence that would establish the actual source or nature of the monthly deposits to his account. It is possible that this issue was addressed at the evidentiary hearing, which the trial court was required by § 217.835 to hold on the respondent's petition, and which took place on February 18, 2004. However, the appellant did not include a transcript of the hearing in the record on appeal, and thus, failed to satisfy the duty imposed by Rule 81.12(c). Mo. Employers Mut. Ins. Co. v. Nichols, 149 S.W.3d 617, 624 (Mo.App.2004). We, therefore, must presume that the contents of such a transcript would be favorable to the trial court's decision and unfavorable to the appellant. In re Marriage of Gerhard, 34 S.W.3d 305, 307 (Mo.App.2001).
It is the appellant's burden on appeal to demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law. Landry v. Miller, 998 S.W.2d 837, 840 (Mo.App.1999). The appellant has failed to demonstrate that the trial court erred in entering its judgment in favor of the State on its MIRA petition.
Point denied.

III.
In his third point, the appellant claims that the trial court erred in ordering him to pay the full filing fee for this appeal because § 506.369 limits an inmate's filing fee to a partial assessment based on the activity of the inmate's correctional center account for the six-month period preceding the filing of the appeal. Specifically, he contends that the record indicates that his account, during the applicable period of time, was such that he should have not been required to pay the full amount of the filing fee. We disagree.
Section 506.369 provides, in pertinent part:
1. If the court receiving a motion pursuant to section 506.366 determines that an offender is unable to pay the full amount of court costs due with respect to a case, the court shall assess a partial payment of the twenty percent of the greater of the following:
(1) The average monthly deposits to the offender's account for the six-month period immediately preceding the filing of the complaint or notice of appeal requiring the payment of a fee; or
(2) The average monthly balance in the offender's account for the six-month period immediately preceding the filing of the complaint or notice of appeal requiring the payment of a fee.
Based on this statute, the State contends that the appellant is not entitled to relief because the record does not indicate that he provided the trial court with a certified copy of his correctional center account statement for the six-month period preceding the filing of his notice of appeal, as required by § 506.366. That section provides:
An offender seeking to bring a civil action or to appeal a judgment in a civil action without the prepayment of fees or *667 security due to indigency shall submit a request to the court to proceed without the prepayment of fees. The request shall include a certified copy of the offender's correctional center account statement, which shall be provided by the department of corrections for the six-month period immediately preceding the filing of the petition or notice of appeal.
§ 506.366.
Section 506.369.1 makes it clear that the requirements of § 506.366 must be met in order for a court to assess a partial payment of court costs. There is nothing in the record indicating that the appellant provided the trial court with the required documentation.
Point denied.

Conclusion
The MIRA judgment of the Circuit Court of Cole County for the State is affirmed.
HOLLIGER and HOWARD, JJ., concur.
NOTES
[1] All statutory references are to RSMo 2000, unless otherwise indicated.
[2] Rule 55.27(f) provides: "A party who makes a motion under this Rule 55.27 may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this Rule 55.27 but omits therefrom any defense or objection then available that this Rule 55.27 permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in Rule 55.27(g)(2) on any of the grounds there stated."
[3] The State expends approximately $13,000 per year for each inmate in the custody of the DOC.
[4] As noted supra, the trial court found that, at the time of the hearing, the appellant had $2,053.28 in his correctional center account, of which $1,847.96 was available for reimbursement.