**STATE of Missouri, ex rel. Jeremiah W. NIXON, Attorney General, State of Missouri, Appellant,**

v.

**Ruby WORTHY, Respondent.**

**No. WD 68152.**

Missouri Court of Appeals, Western District.

Jan. 15, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2008.

As Modified March 4, 2008.

---

Jeremiah W. (Jay) Nixon, Attorney General, Paul Harper, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Michael S. Shipley, Liberty, MO, for Respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., J., and JAMES WELSH, Sp. J.

JAMES M. SMART, JR., Judge.

The State of Missouri, at the relation of the Missouri Attorney General, appeals the circuit court's denial of its petition against inmate Ruby Worthy in which it sought to recover the costs of her incarceration. The judgment is affirmed.

## Background

Ruby Worthy is an inmate in the custody of the Missouri Department of Corrections. She was first incarcerated in 1992. She currently is serving sentences totaling forty-five years.

### *Petition and Show Cause Order*

In December 2005, the Attorney General filed a petition against Worthy under the Missouri Incarceration Reimbursement Act (MIRA), sections 217.825–.841, RSMo

2000.[1] The Missouri legislature enacted MIRA in 1988 "as a means of reimbursing the state for the cost of caring for and maintaining prisoners in the Missouri Department of Corrections." *State ex. rel. Nixon v. Turpin,* 994 S.W.2d 53, 55 (Mo. App.1999). The petition alleged that the State expends $14,000 per year for each inmate in its custody and that the total cost of Worthy's incarceration, to date, was $84,074.06. The petition also alleged that Worthy "receives a steady stream of income from [seven named individuals]." The petition stated that the Attorney General has "good cause to believe" that, through this action, he will recover not less than either ten percent of the estimated cost of Worthy's care or ten percent of the cost of her care for two years, whichever amount is less, as required by statute.

Along with the petition, the Attorney General submitted a copy of Worthy's inmate account record for the period of December 1, 2004, through December 21, 2005. It showed the balance as of December 21, 2005, two days before the petition was filed, as $1,395.16. The highest balance for the period was $1,900.51. Worthy had received deposits over that time period totaling $6,585 (an average of around $500 per month) from the seven individuals named in the petition. The bulk of that sum came from an individual named Dietrich Albrecht, whom Worthy later identified as a family friend. He deposited a total of $4,540 into her account. She had received thirteen monthly payments of $8.50 from the State payroll, totaling $110.50. She had expended $7.00 in two payments to the Family Support Payment Center for the support of her children. There were five withdrawals from her account totaling $554.74 that apparently went to individuals. Worthy had expended $4,512.97 (averaging almost $350 per month) in canteen purchases, that is, purchases within the correctional institution. A net total of $1,144.70 was paid to outside vendors, apparently through catalog purchases. In sum, Worthy had received a net of $6,585, excluding her wages from the State, and expended a net of $6,212.41, excluding her payments to the Family Support Center.

The circuit court issued an order requiring Worthy to show cause as to why judgment should not be entered against her. The court also appointed a receiver over the funds in her inmate account.

### Worthy's Response

Worthy filed a timely *pro se* response, asserting that the petition should be dismissed. She claimed that the Attorney General lacked the authority to file the petition because he did not have "good cause to believe there were sufficient assets to recover" either of the statutory amounts. She also said the Attorney General "knew, or should have known, before filing [that she] was not receiving a steady 'stream of income' for purposes of section 217.831.3." She claimed the action was based on cash gifts from her family and friends.[2]

Worthy also sent a letter addressed to the judge saying she needed the gifts to purchase her own personal hygiene items and supplies for writing to her children

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

2. Worthy also stated that she was submitting answers to the State's interrogatories as an attached exhibit, but neither the interrogatories nor answers have been made a part of the record on appeal. Docket entries indicate there were interrogatories and requests for production of documents filed by both sides; the State has not provided copies of those items.

($60), pay her court-ordered child support (the amount of which she did not specify), send money for the children's school clothes ($300), and order their shoes and coats. She also said she contributes to fundraisers and likes to "help people and programs in the community."

Worthy submitted her own affidavit in which she averred, *inter alia*, that "the people that ... send me cash gifts are mostly family and friends." She identified four of the seven named individuals as her father, mother-in-law, aunt, and a "mutual friend in my family." Those four depositors accounted for $6,215 of the $6,585 deposited.[3] She did not mention the other three depositors, whose deposits totaled $370. She stated that she uses the gifts from family and friends to pay for such things as child support and legal fees. She is allowed to spend up to $300 per month at the canteen, she said, and has used the money to purchase such things as a television, lamp, or fan, and to order from catalogs. She said she has no income beyond these gifts and she "do[es] not expect or anticipate having any assets in the future."

In May 2006, an attorney filed an additional answer and response on Worthy's behalf, again claiming that all the deposits were gifts. She also alleged that "the action is void *ab initio* due to plaintiff's failure to satisfy a condition precedent to its institution."

### Stipulation of Facts and Trial Briefs

In September 2006, the parties submitted a stipulation of facts to the court. The parties agreed that Ruby Worthy is a prisoner committed to the custody of the Department of Corrections, that the State had expended $156,442.13 for her care, and that the current estimated cost of her care for two years is $28,000. The parties stipulated that an attached copy of Worthy's inmate account was "a true and correct statement" of the activities in the account.

An affidavit from Stacy K. Shulte of the Attorney General's office was admitted in evidence by stipulation. It explained the basis for the Attorney General's good cause determination, *i.e.*, that Worthy's inmate account statement showed she received regular deposits into her account and that from the period of December 1, 2004, through December 21, 2005, she had received $7,493.18[4] from sources other than wages earned while incarcerated. From this, the Attorney General determined he had good cause to believe that Worthy has sufficient assets to pay the State at least $2,800 (or ten percent of two years' cost of care) for her incarceration.

The parties also stipulated that an affidavit from Ruby Worthy would be admitted as evidence to be considered by the court. It stated:

1. All deposits to my inmate account, except those for wages and salary earned while incarcerated, have been gifts.

2. I have not had total assets in excess of $2,100.00 at any time during my incarceration.

The parties submitted trial briefs. The State argued that it had good cause to file

---

3. The person she identified as a "mutual family friend" was Dietrich Albrecht, who had made seven deposits totaling $4,540 ($800 in December; $750 in January; $850 in March; $400 in April; $800 in June; $540 in September; and $400 in October). From her father, she received one $500 deposit. Her mother-in-law had sent her $1,025, and her aunt deposited a total of $150 into her account.

4. This figure includes what appear to be refunds from catalog purchases in addition to actual deposits. The amount of these deposits (excluding the apparent refunds) was $6,585.

because a reasonable person would believe that $2,800 could be recovered when the inmate "receives over $600 per month." The State has not taken issue with Worthy's assertion under oath that the deposits were gifts. It argued simply that gifts are not exempt from MIRA reimbursement.

Worthy argued in her trial brief that gifts are not subject to MIRA recovery. She noted that it was undisputed that all deposits to her account, other than wages, were gifts. Worthy also argued that the Attorney General lacked authority to bring the suit because he did not satisfy the condition precedent of good cause prior to filing the petition.

The State replied that in order to determine whether there was a basis for the finding of good cause, the court must look only to what the Attorney General knew at the time of filing. Here, the Attorney General had no information that the deposits were gifts at that time. Therefore, says the State, there clearly was "good cause."

### Judgment

Following a hearing,[5] the court entered judgment for Worthy. The court stated, *inter alia,* that

the Attorney General's authority to pursue a [MIRA] action is dependent upon proof that an offender "has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period."

The court noted that Worthy did not possess assets in her account amounting to $2,800. Thus, the only issue before the court was whether Worthy had "a stream of income sufficient to pay all such amounts within a five-year period." The court determined that she did not. The court found, based on the "undisputed record," that "all deposits to Defendant's account, other than ... wages earned while incarcerated, were gifts." The court concluded, as a matter of law, that gifts are not a "stream of income," because the expectation of future gifts can never be considered "due" an offender.

The State filed a motion to amend based on *State ex rel. Nixon v. Watson,* 204 S.W.3d 716 (Mo.App.2006), which was handed down in the midst of the proceedings. The Attorney General also complained that the court "appears to have based its decision on facts other than those in the stipulated facts," but did not specify what those other facts were. The court denied the State's motion to amend, but stayed the judgment pending appeal.

The State appeals.

### Standard of Review

■ Appellate review of this bench-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *State ex rel. Nixon v. Karpierz,* 105 S.W.3d 487, 488 (Mo. banc 2003). *Murphy* requires the appellate court to affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or erroneously applies the law. *Id.; Murphy,* 536 S.W.2d at 32.

---

**5.** Docket entries indicate that a hearing of some sort was held. The appellant has not provided any transcripts.

## MIRA Procedures

Under MIRA, every inmate is required to complete a form, under oath, listing his or her assets. Section 217.829.3. The inmate faces harsh penalties for not providing "complete and accurate" information on that form. *See id.* (the offender is subject to prosecution under section 575.050 for "*making a false affidavit*" if he knowingly provides false information); and section 217.829.4 (failure "to fully, adequately and correctly complete the form" may be considered by the parole board and "shall constitute sufficient grounds for denial of parole").

The Director of the Department of Corrections forwards a report on each offender to the Attorney General. Section 217.831.1. That report includes the inmate's completed asset disclosure form, along with "all other information available on the assets of the offender and an estimate of the total cost of care for that offender." *Id.*

Section 217.831.2 states: "The attorney general may investigate or cause to be investigated all reports furnished pursuant to the provisions of subsection 1 of this section." Subsection 3 of section 217.831 assumes that the Attorney General will conduct such an investigation prior to filing a petition for reimbursement. Section 217.831.3 provides:

If the attorney general *upon completing the investigation under subsection 2 . . .* has good cause to believe that an offender . . . has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, *or has a stream of income sufficient to pay such amounts within a five-year period,* the attorney general may seek to secure reimbursement [for the

State's expenses] for the cost of care of such offender. . . . (Emphasis added.)

Once the Attorney General files a MIRA complaint, the circuit court must issue an order for the inmate to show cause why the complaint should not be granted. Section 217.835.2. Following a hearing, the court shall order reimbursement "if it appears that the person has any assets which ought to be subjected to the claim[.]" Section 217.835.3. MIRA defines "assets" as "property . . . belonging to or due an offender . . ., including income or payments to such offender from . . . any [ ] source whatsoever, including . . . [a] current stream of income[.]" Section 217.827(1)(a). Section 217.827(1)(b) excludes the inmate's homestead, up to $50,000 in value, and up to $2,500 in wages earned *while incarcerated.* The State may recover no more than ninety percent of the inmate's assets as reimbursement. Section 217.833.1.

## Point I

■ The State's first Point Relied On states:

The trial court erred in granting judgment based on a ruling that the Attorney General did not have good cause to file because MIRA does not provide a defense based on the good cause provision and, if a review of the Attorney General's administrative decision exists under Missouri law, the trial court may only review the determination if the offender filed a counterclaim under [sec.] 516.150(sic), RSMo, in that Worthy never filed a counterclaim under [sec.] 536.150, RSMo.

Rule 84.04(e) requires "[t]he argument [to] be limited to those errors included in the 'Points Relied On.'" As a general rule, failure to include a claim in the Point Relied On results in waiver of the claim. *See State v. Rogers,* 973 S.W.2d 495, 498 (Mo.App.1998) ("An appellate court re-

views only issues raised in the points relied on in an appellant's brief.").

The Point Relied On here is confusing. Section 536.150 was never mentioned in the trial court. It is not at all clear what the Attorney General's real argument is here.

The Attorney General raises an argument about section 536.150, we suppose, to try to rebut the anticipated argument of Worthy that notions of due process would indicate that the statute drafters contemplated some form of judicial review of the "good cause" determination.

The State, in the argument under the Point Relied On, argues that the judgment is erroneous because it relies upon facts that were unknown to the Attorney General when he made his good cause determination — *i.e.*, that the deposits were gifts. Therefore, the State says, the court erred in finding that the deposits could not support the good cause determination *because they were gifts*.

■ Because the State did not include this claim in its Point Relied On, we decline to examine it further. *See* Rule 84.04(e); *Rogers*, 973 S.W.2d at 498.

### The Good Cause Issue is Moot Because the Trial Court Decided that the State Could Not Prevail On the Merits

The State also says the trial court misstated the law in reciting that the Attorney General's authority to pursue a MIRA action "is dependent upon proof" that an offender has sufficient assets to satisfy the section 217.831.3 requirements. The State points out that the Attorney General is not required to prove "good cause" for filing the petition to prevail on a summary judgment motion. *See Watson*, 204 S.W.3d at 720 (*citing State ex rel. Nixon v. Koonce*, 173 S.W.3d 277, 284–85 (Mo.App.2005)).

■ Even if this is true, it does not mean that the judgment is necessarily erroneous. This is because the court's judgment was based on a determination pursuant to Rule 74.04 that Worthy was entitled to judgment as a matter of law because (1) there was no dispute as to any material facts and (2) Worthy had demonstrated that she had no "assets" subject to the reach of MIRA.

The judgment in this case rests upon the trial court's determination that the deposits to Worthy's account were gifts and its legal conclusion that gifts do not qualify as a "stream of income." The State contends that the court erred in this legal conclusion but says this court need not reach that issue because the other errors mandate reversal. The State does not contest the court's factual finding that the deposits to Worthy's account were gifts.

Worthy had an inmate account with a balance of $1,395.16 when the petition was filed. Her highest balance for the period in question was $1,900.51. It was undisputed that Worthy did not have assets of at least $2,800 in her account, which would be ten percent of the cost of her maintenance for two years. Thus, the only question for the court was whether she had a "stream of income" subject to recovery under MIRA. The State argued that because she received deposits into her account, from sources other than wages, amounting to over $6,500 during a thirteen-month period, she did have a "stream of income." The court determined that she did *not*, because those deposits were gifts.

After analysis, the court concluded that, as a matter of law, gifts do not qualify as "a stream of income" within the meaning of the statute. The court based this conclusion primarily on its determination that an "unenforceable expectation or hope of future gifts" does not constitute an "*asset*

*belonging to*" an offender or "*due*" an offender. (Emphasis added.) A gift to be received in the future obviously does not "belong to" the recipient in advance of receipt. Also, by definition, the word "gift" describes something that cannot be "due" the recipient. Obviously, if something is "due" the intended recipient, it is an entitlement, not a gift. The payment of a sum of money cannot be a gift unless the recipient has no entitlement to it. The court also found, based on the undisputed record, that all deposits to Worthy's account, other than "wages earned while incarcerated," were gifts. In view of the fact that we find no authority to contradict the trial court's statutory interpretation, we fail to see how we can fault either the trial court's factual determination or the court's interpretation of the plain language of the statute. Point denied.

### Point II

■ The State's second Point Relied On says:

> The trial court erred in granting judgment against the State because MIRA provides that the trial court must enter judgment for the State if an offender has assets that are subject to MIRA in that the State proved that Worthy is an offender with assets subject to MIRA.

Worthy correctly notes that this Point Relied On "is so abstract as to violate Supreme Court Rule 84.04(d), and therefore preserves nothing for review." "Abstract statements of law, standing alone, do not comply" with Rule 84.04(d)(4). Compliance with Rule 84.04 is important to ensure that appellate courts do not act as advocates by speculating about facts or arguments that have not been made. *Johnson v. Mo. Dep't. of Health & Senior Servs.*, 174 S.W.3d 568, 587 (Mo.App.2005). In any event, this point was presumably an intent to rehash some of the arguments already made. Point denied.

### Conclusion

Based on the foregoing, the judgment is affirmed.

HARDWICK, J. and WELSH, Sp. J., concur.