STATE of Missouri, ex rel., Jeremiah
W. NIXON, Missouri Attorney
General, Appellant,

v.

Victor HUGHES, Respondent.

No. WD 69891.

Missouri Court of Appeals,
Western District.

April 7, 2009.

Robert D. Noland, Kansas City, MO, for Appellant.

Victor Hughes, New Madrid, MO, pro se.

Before: ALOK AHUJA, P.J., HAROLD L. LOWENSTEIN, J., and THOMAS H. NEWTON, C.J.

THOMAS H. NEWTON, Chief Judge.

The State appeals the circuit court's judgment granting Victor Hughes's motion for summary judgment on its petition, filed pursuant to §§ 217.825–.841, RSMo 2000, seeking reimbursement for the cost of his incarceration in the Missouri Department of Corrections. On appeal, the State raises two points. We reverse and remand.

**Factual and Procedural Background**

In 2005, Hughes was convicted of committing burglary in the second degree, forgery, and possession of a controlled substance. The circuit court sentenced him to serve a term of seven years in the department of corrections.

On October 18, 2007, the State filed a petition in the circuit court against Hughes seeking reimbursement for the cost of his incarceration. On October 25, 2007, the circuit court ordered Hughes to show cause why the circuit court should not enter judgment against him. Hughes did not answer the order. On January 22, 2008, the circuit court *sua sponte* dismissed the State's petition on the basis that Hughes had insufficient funds to reimburse the State for his incarceration. The State filed a motion to set aside the dismissal on the basis that the Attorney General needed only "good cause" to believe that Hughes had sufficient assets. The circuit court granted the State's motion on February 14, 2008.

On February 13, 2008, Hughes filed a motion entitled "Memorandum in Support of Motion for Summary Judgment." On March 4, 2008, the State filed a motion for summary judgment with suggestions in support of the motion. On June 19, 2008, the circuit court entered summary judgment against the State on the basis that the Attorney General did not have good cause to believe that Hughes had sufficient assets to reimburse the State because the undisputed evidence established that all of Hughes's prior assets were gifts. This appeal follows.

## Legal Analysis

In its first point on appeal, the State claims that the circuit court erred in granting summary judgment for Hughes because Hughes's motion for summary judgment violated Rule 74.04(c)[1] and was void. Specifically, the State claims that Hughes's motion for summary judgment violated Rule 74.04(c) because, in his motion, he failed to include a statement of uncontroverted facts, with specific references to any pleadings, discovery, exhibits, or affidavits to establish that he had a right to judgment as a matter of law. We agree.

▇▇▇ In reviewing the circuit court's grant of summary judgment, our review is essentially *de novo:*

The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*State ex rel. Nixon v. Watson,* 204 S.W.3d 716, 718 (Mo.App.2006) (citation omitted). In reviewing the grant of summary judgment, we review the record in the light most favorable to the party against whom judgment was entered and accord him the benefit of all reasonable inferences from the record. *Id.* at 719.

▇▇▇ "To be entitled to summary judgment, the movant must demonstrate that: (1) there is no genuine dispute as to the material facts on which he relies for summary judgment; and (2) based on those facts, he is entitled to judgment as a matter of law." *Id.* (citing Rule 74.04(c)(6)). "The right to judgment as a matter of law differs significantly depending upon whether the movant is a 'claimant' or a 'defending party'". *Id.* In this case, Hughes moved for summary judgment as the defendant. When the moving party is the defendant, he can establish summary judgment in one of three ways:

[A] *prima facie* case for summary judgment can be established by employing one or more of three means: (1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense. 'Regardless of which of these three means is employed by the "defending party," each

---

1. All rule references are to Missouri Rules of Civil Procedure, 2008, unless otherwise indicated.

establishes a right to judgment as a matter of law.'

*Childress Painting & Assocs., Inc. v. John Q. Hammons Hotels Two, L.P.,* 106 S.W.3d 558, 561 (Mo.App.2003) (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371 (Mo. banc 1993)).

■ The Missouri Incarceration Reimbursement Act (MIRA) allows the State to seek reimbursement from the offender for the cost of his incarceration. §§ 217.825–217.841; *Watson,* 204 S.W.3d at 719. Pursuant to MIRA, upon being sentenced to the department of corrections, an offender is required to complete a standard form regarding his assets. §§ 217.829.1–3. The director of the department is required to forward a report on each offender to the Attorney General. § 217.831.1. The report must include the completed form and any other available information regarding the offender's assets and cost of his incarceration. *Id.* The Attorney General may then investigate the offender's assets. § 217.831.2. If, after the completion of his investigation, the Attorney General has "good cause" to believe that the offender has sufficient assets for the State to recover at least "ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period," he "may seek to secure reimbursement." § 217.831.3. If the Attorney General has this belief, then he is authorized to file a petition in the circuit court to recover the cost of the offender's incarceration:

The attorney general may file a complaint in the circuit court for the county or city from which a prisoner was sentenced or in the circuit court in the county or city of the office of the director of the department, against any person under the jurisdiction of the department stating that the person is or has been an offender in a state correctional center, that there is good cause to believe that the person has assets, and praying that the assets be used to reimburse the state for the expenses incurred or to be incurred, or both, by the state for the cost of care of the person as an offender.

§ 217.835. Once the Attorney General files the petition, the circuit court is required to issue an order to the offender to show cause why the complaint should not be granted. § 217.835.2. At the hearing on the State's petition, the State, to establish its *prima facie* case, is required to show that (1) the offender is incarcerated in a state correctional facility, and (2) he has assets that could be used for reimbursement. *See State v. Overmyer,* 189 S.W.3d 711, 717 (Mo.App.2006) (outlining *prima facie* case for summary judgment for a MIRA petition).

■ The good cause provision of § 217.831.3, therefore, is not part of the State's *prima facie* case. While the Attorney General is required to have good cause to believe that the offender has sufficient assets before he is allowed to file the petition, the Attorney General is not required to prove, at the hearing, that the offender actually has those funds. *State ex rel. Nixon v. Houston,* 249 S.W.3d 210, 214 (Mo.App.2008). In fact, MIRA's statutory scheme makes it clear that there is no minimum amount that must be recovered. *Id.* at 213. The good cause requirement is not part of the State's *prima facie* case or a defense to the State's *prima facie* case because the General Assembly did not enact the good cause requirement to protect the offender by limiting the extent to which the State could deplete his assets. *Watson,* 204 S.W.3d at 720. Rather, it was "intended only as a check on the ability of

the Attorney General to bring suit for MIRA reimbursement in order to insure that there was a high probability of a financial gain to the State when its limited resources were expended by the Attorney General in prosecuting such actions." *Id.* Thus, so long as the Attorney General had good cause to file the petition, the court is required to adjudicate the proper amount regardless of the offender's actual assets. *Houston,* 249 S.W.3d at 212–13.

Although the good cause provision is not part of the State's *prima facie* case, it is still a condition precedent that the Attorney General must satisfy before he is allowed to file a MIRA petition. *Id.* at 214. Accordingly, if an offender raises a factual issue as to the existence of the Attorney General's good cause, the offender is entitled to an evidentiary hearing where the circuit court is required to determine whether or not the Attorney General had good cause to believe that the offender had sufficient assets. *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 83–84 (Mo. banc 2008). If the circuit court determines that the Attorney General did not have good cause, then the State's petition is void. *Houston,* 249 S.W.3d at 214.

In his summary judgment motion, Hughes sought summary judgment because the State did not have good cause to believe that the State could recover sufficient assets to justify filing a reimbursement petition. To be entitled to summary judgment on this issue, Hughes was obligated to establish that (1) there was no genuine dispute as to the material facts on the good cause requirement and (2) based on those facts, he was entitled to judgment as a matter of law. Rule 74.04(c)(6).

In making his case for summary judgment, Rule 74.04(c)(1) required him to make specific references to the record:

A statement of uncontroverted material facts shall be attached to the motion. The statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts.

Attached to the statement shall be a copy of all discovery, exhibits or affidavits on which the motion relies.

Rule 74.04 requires the movant to set forth a specific basis for summary judgment and list specific references to the record to support the basis for summary judgment so the opposing party, the circuit court, and the appellate court are apprised of the movant's claim of entitlement to summary judgment. *Miller v. Ernst & Young,* 892 S.W.2d 387, 389 (Mo.App.1995). Because the underlying purpose of Rule 74.04 is directed toward helping the court expedite the disposition of case, compliance with the rule is mandatory. *Id.* To allow the circuit court or appellate court to enter summary judgment on a motion that failed to state with particularity the reasons why the movant is entitled to summary judgment would place the court in the position of performing the work of an advocate. *Id.* It is not the function of the circuit court or appellate court to sift through a voluminous record in an attempt to determine the basis for the motion. *Id.* Thus, a summary judgment motion that fails to set forth each material fact in separately numbered paragraphs and fails to specifically reference the record is legally defective and cannot serve as the basis for the circuit court's grant of summary judgment. *Hanna v. Darr,* 154 S.W.3d 2, 5 (Mo.App. 2004). Hence, given the statutory scheme of MIRA and the procedural law of summary judgment, to establish a *prima facie*

case for summary judgment, Hughes, in his motion, had to set out uncontroverted facts with specific references to the record that established that the Attorney General lacked good cause to believe that he had sufficient assets to justify the filing of a reimbursement petition.

Hughes's motion, which he entitled "Memorandum of Law In Support of Motion for Summary Judgment," stated:

COME NOW DEFENDANT, Victor Hughes # 347226, Pro Se, In support of his motion for summary judgment, and now motion to Quash, Motion to SET ASIDE Dismissal here by states:

1) The assets, pursuant to provisions, under R.S. Mo. §§ 217.825 to 217.841, claimed by the State of Missouri, which are deposits into inmates account of the DEFENDENT [sic], Victor Hughes. These deposits have been gifts from friends and family, as such, gifts are not "assets, belonging to" an offender, or due an offender. *State ex rel. Nixon v. Worthy,* [247 S.W.3d 8] 2008 Mo.App. LEXIS 38[(Mo.App. 2008)]. Where the State alleges a savings account, at the time of Defendents [sic] incarceration, the value of the "bank account" was approximately $100.00 (one hundred dollars). The current value is approximately $60.00. Therefore, the State has failed to show the assets of the Defendant to be not less than ten percent of the estimated cost of care of the offender, or ten percent of the estimated cost of care of offender for two years.

2) The Attorney General, knew, or should have known before filing, that the DEFENDENT [sic] was not, and is not receiving a "steady of income." The Defendent's [sic] income is only $7.50 a month from the state. The gifts from family and friends have stopped in December 2007. The gifts received were

neither of the same amounts, nor were in any specific time frame.

WHEREFORE, the DEFENDENT [sic] requests that the court inter [sic] summary judgment in the favor pursuant to Rule 74.04 of the Missouri Rules of Civil Procedure.

In his motion, Hughes claims that he is entitled to summary judgment because the Attorney General did not have good cause to believe that Hughes had sufficient assets to reimburse the State for his incarceration because all of his assets in his account were gifts. Even a cursory glance at Hughes's motion, however, establishes that his motion violates Rule 74.04(c). In violation of Rule 74.04(c), Hughes's motion fails to include a statement of uncontroverted materials facts, which establish that he is entitled to judgment as a matter of law. Furthermore, while Hughes does allege that the assets in his account were gifts, he fails to include specific references to the pleadings, discovery, exhibits, or affidavits to support this assertion. Hughes's motion is so defective that the only way that the circuit court could have entered summary judgment for him on the basis that the Attorney General did not have good cause to believe that he had sufficient assets to reimburse the State for his incarceration was to sift through the record to find facts supporting Hughes's position, which, of course, it was not allowed to do. *Miller,* 892 S.W.2d at 389. Thus, because Hughes's motion was legally defective, it could not serve as the basis for the circuit court's grant of summary judgment. *Hanna,* 154 S.W.3d at 5. The circuit court, therefore, erred in entering summary judgment for Hughes.

■ Even assuming, however, that this was not a sufficient reason to reverse the circuit court's judgment, we would also reverse based on the State's second point. In its second point, the State claims that

the circuit court erred in granting summary judgment to Hughes on the basis that Attorney General lacked good cause because Hughes (1) failed to plead the correct facts in his motion and, even assuming that he did, (2) the State sufficiently carried its burden to place those facts in genuine dispute. We agree.

In his motion, Hughes claims that he is entitled to summary judgment because the only funds, besides his prison wages, that were deposited in his account were gifts. Hughes is correct that if the deposits in his account were gifts and the only funds to be deposited in his account in the future were likely to be gifts, then the Attorney General may not have had good cause to believe that an offender has sufficient assets or a stream of income to justify the filing of a reimbursement petition. *See e.g. Peterson,* 253 S.W.3d at 84 (offender entitled to evidentiary hearing to determine whether Attorney General had good cause because the offender alleged that the money in his account were gifts and the donors had no intention of giving him any more money); *State ex rel. Nixon v. Bowers,* 259 S.W.3d 594, 596 (Mo.App.2008) (offender entitled to evidentiary hearing when he alleged that his only income came from gifts, which could be cut off at any point). This is because the prospect of a future gift falls outside the definition of an asset. Section 217.827 defines asset as:

> [P]roperty, tangible or intangible, real or personal, *belonging to or due an offender* or a former offender, including income or payments to such offender from Social Security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, including ... [a] current stream of income[.]

(Emphasis added.) The courts have concluded that a hope of a future gift does not constitute an asset because the offender has no entitlement to it, and, therefore, it neither belongs to him nor is it due to him. *State ex rel. Nixon v. Worthy,* 247 S.W.3d 8, 14–15 (Mo.App.2008). Thus, if the offender's prior income or future income is comprised of gifts, then the attorney general may not have good cause to believe that the offender has sufficient assets to justify reimbursing the State for his incarceration. A mere allegation that his funds were gifts, however, is not sufficient to establish that the Attorney General lacked good cause to believe that he had sufficient assets.

As we noted above, before the Attorney General can file a reimbursement petition, he must have "good cause" to believe that the offender has sufficient assets to recover at least "ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period[.]" § 217.831.3. The General Assembly did not define good cause in § 217.831.3. When the General Assembly does not include a definition of a term but it has a common law meaning, we presume that the General Assembly intended that meaning. *Morgan v. Gaeth,* 273 S.W.3d 55, 59 (Mo.App.2008).

> [Under the common law, t]he meaning of the concept of 'good cause' appears to vary to some extent according to the context in which the issue arises. Good cause has been defined as 'a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances.' *State v. Davis,* 469 S.W.2d 1, 5 (Mo.1971) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY). Generally,

the term 'good cause' necessarily implies reasonableness and good faith.

*Id.* (citation omitted); *see also State ex rel. Nixon v. Koonce,* 173 S.W.3d 277, 284 (Mo.App.2005) (holding that Attorney General can file a reimbursement petition if he has a reasonable belief that the offender has sufficient assets to justify using the State's resources to recover them). Thus, the Attorney General must have a good faith and reasonable belief that the offender has sufficient assets. The Attorney General does not need to prove that the offender actually has sufficient assets. *Houston,* 249 S.W.3d at 214.

Given this law, it was not enough for Hughes to allege facts establishing that the prior deposits were gifts. Rather, to establish his right to summary judgment, he would have to allege uncontroverted facts establishing that the Attorney General knew or should have known that the prior deposits to Hughes's inmate account were gifts and, thus, the Attorney General could not have had a good faith and reasonable belief that Hughes had sufficient assets to reimburse the State for his incarceration. In that regard, Hughes makes a conclusory allegation that "The Attorney General, knew, or should have known before filing, that the DEFENDANT [sic] was not, and is not receiving a 'steady of income.'" He, however, does not allege any facts from which the court can infer that the Attorney General should have known that the prior deposits in his account were gifts. The circuit court, therefore, could not grant Hughes summary judgment on this issue on the basis that Hughes did not have sufficient assets because the only money deposited in his account were gifts.

▮▮▮ Furthermore, even assuming that Hughes's motion can be construed as alleging that the Attorney General should have known that these assets were gifts,

he was not entitled to summary judgment. Assuming that Hughes's motion adequately pleaded facts establishing that the Attorney General lacked good cause to believe that Hughes had sufficient funds because the Attorney General should have known that these funds were random gifts and Hughes had no expectation that he would continue to receive these gifts, the burden would merely shift to the State to place in genuine dispute one or more of the material facts on which Hughes relied. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 381 (Mo. banc 1993). A genuine issue exists when the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. If the movant requires an inference to establish his right to summary judgment, and the record supports a reasonable inference other than the movant's inference, then the movant is not entitled to summary judgment because a genuine issue exists. *Id.* For the non-moving party to dispute a fact sufficiently to defeat a *prima facie* case for summary judgment, he or she must support his or her factual allegations with specific references to the record. Rule 74.04(c)(2).

In that regard, in its motion for summary judgment and its answer to Hughes's motion for summary judgment, the State alleged that:

10. The records of the inmate treasurer showed that Victor Hughes received payments from sources other than wages and salary into his inmate account. Specifically, [since July 2007,] he received $1,275.00 ... from his ex-wife and power of attorney, Ramonia Black....

11. From this information related to the deposits into his inmate account, the Attorney General made the determina-

tion that he has good cause to believe that Victor Hughes has sufficient assets or a sufficient stream of income to pay the State of Missouri at least $3,000 of his total incarceration [costs]. . . .

As required by Rule 74.04(c), the State listed these facts and made specific references to the record.

As the State points out, from these facts, a person could conclude that the Attorney General had a reasonable basis for believing that, because Hughes had received $1,275 in six months, he had sufficient assets, or a sufficient stream of income, to pay at least $3,000 for his incarceration within a five-year period. The State also points out on appeal that, although Hughes claims that his ex-wife was giving him gifts, the Attorney General had a reasonable basis for believing that, because she was his ex-wife and attorney-in-fact, she was merely depositing Hughes's own money into his account. At the very least, the record supports two competing reasonable inferences so a genuine factual dispute appears in the record. Thus, the circuit court erred in entering summary judgment for Hughes. The judgment is reversed, and the case is remanded for the circuit court to hold a hearing on the issue of whether or not the Attorney General, at the time he filed the petition, had a reasonable and good faith belief that Hughes had sufficient assets to justify the filing of a reimbursement petition.

AHUJA, P.J., and LOWENSTEIN, J. concur.