**STATE of Missouri, ex rel. Jeremiah W. NIXON, Attorney General, State of Missouri, Respondent,**

v.

**Richard Dale PETERSON, Appellant.**

No. SC 88776.

Supreme Court of Missouri,
En Banc.

May 20, 2008.

Michael T. George, James J. Wieczorek, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Paul Harper, Asst. Atty. Gen., Jefferson City, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

Richard Peterson is an inmate in a state correctional center. The attorney general filed a petition against Peterson for incarceration reimbursement pursuant to the Missouri Incarceration Reimbursement Act (MIRA), section 217.825 *et seq.*[1] The trial court granted summary judgment in favor of the state. Peterson appeals, arguing that the definition of "assets" in section 217.827(1)[2] was unconstitutionally vague,

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

2. Section 217.827(1)(a) defines "assets" as
 ... property, tangible or intangible, real or personal, belonging to or due an offender or a former offender, including income or payments to such offender from Social Security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, including any of the following:
 a. Money or other tangible assets received by the offender as a result of a settlement of a claim against the state, any agency thereof, or any claim against an employee or independent contractor arising from and in the scope of said employee's or contractor's official duties on behalf of the state or any agency thereof;
 b. A money judgment received by the offender from the state as a result of a civil action in which the state, an agency thereof or any state employee or independent contractor where such judgment arose from a claim arising from the conduct of official duties on behalf of the state by said employee or subcontractor or for any agency of the state;
 c. A current stream of income from any source whatsoever, including a salary, wages, disability, retirement, pension, in-

that the statutory procedures in the MIRA violated his right to due process, and that the attorney general lacked authority to file the petition for reimbursement.

The definition of "assets" is not unconstitutionally vague, and the procedures in the MIRA afforded Peterson sufficient due process. However, because Peterson raised a genuine issue as to a material fact, whether the attorney general had good cause to believe that the state would recover the statutory amount, summary judgment was not properly entered. The judgment is reversed, and the case is remanded.

## I.

In 1995, Richard Peterson was convicted of first degree robbery and was sentenced to 25 years. From 2002 through 2004, Peterson had a position in the correctional center's hobby craft room and would sell his completed woodcraft projects to his family and to other inmates and their families. Peterson also received a monthly deposit from the state payroll.

In May 2006, the attorney general filed a petition for incarceration reimbursement under the MIRA. The attorney general stated that the state had good cause to believe that it could recover at least ten percent of Peterson's estimated cost of care or ten percent of his cost of care for two years.[3] The attorney general argued that Peterson received regular deposits in his inmate account and attached a copy of his account statement from October 2005 through April 2006. The statement showed a closing balance of $1,770.65 and $1,767.50 in total deposits, excluding the monthly deposit from the state payroll.

The court issued a show cause order and an ex parte order appointing a receiver for Peterson's funds. Peterson filed an answer to the petition and a response to the show cause order. Peterson argued that the definition of "assets" in section 217.827(1) is unconstitutionally vague and that the act violated his due process rights because he received no hearing prior to the court's order seizing his assets. Peterson also argued that the attorney general had no authority to file the petition for reimbursement, challenging the attorney general's finding of good cause required by section 217.831.3.[4]

The attorney general filed for summary judgment. Peterson filed a response to the summary judgment motion, in which he reasserted his previous arguments and attached affidavits from the individuals

surance or annuity benefits or similar payments;
Section 217.827(1)(b) states that assets shall not include:
a. The homestead of the offender up to fifty thousand dollars in value;
b. *Money saved by the offender from wages and bonuses up to two thousand five hundred dollars paid the offender while he or she was confined to a state correctional center;*
(Emphasis added).

3. The parties agree that the state expends $14,000.00 per year for each inmate at the department of corrections and up to this date. Ten percent of Peterson's cost of care for two years was $2,800.00.

4. Section 217.831.1 states that the director shall provide the attorney general with a report on each offender with information on available assets. The attorney general may investigate all reports and may seek to secure reimbursement for the cost of care of an offender if the attorney general

... has *good cause to believe that an offender or former offender has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period* ...
Section 217.831.3 (emphasis added).

who deposited money into his account during this time period. In these affidavits, the individuals stated that they have no intention of making any future deposits into Peterson's account. Two of the individuals stated that some of the funds they deposited were proceeds from the sale of his woodcrafts.

In August 2006, the court granted the attorney general's summary judgment motion and ordered reimbursement. Peterson appeals. Because Peterson challenges the constitutionality of the MIRA, this Court has jurisdiction pursuant to article V, section 5 of the Missouri Constitution.

## II.

Peterson argues that the term "assets" defined in section 217.827(1) is vague, uncertain, and fails to make clear what can be considered "assets" to trigger reimbursement proceedings. Specifically, Peterson argues that the definition of "assets" is unclear because proceeds from the sale of his woodcrafts should be excluded as "wages and bonuses" pursuant to section 217.827(1)(b).

"The void for vagueness doctrine ensures that laws give fair and adequate notice of proscribed conduct and protects against arbitrary and discriminatory enforcement." *See Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999). "The test in enforcing the doctrine is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* The language is to be evaluated by applying it to the facts at hand. *Id.* at 958–59.

Section 217.827(1)(b) states that "assets" shall not include "[m]oney saved by the offender from wages and bonuses up to two thousand five hundred dollars paid the

offender while he or she was confined to a state correctional center."

The terms "wages" and "bonuses" are not void for vagueness. The word "wage" is defined as "a payment of monetary remuneration by employer for labor and services usually according to a contract and on an hourly, daily, or piecework basis often including bonuses ..." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2568–69 (3d ed.1993). "Wage" is also similarly defined in other statutory sections. In employment security law, "wage" is defined as "all remuneration, payable or paid, for personal services including commissions and bonuses...." Section 288.036.1. The Internal Revenue Code defines "wage" as "all remuneration ... for services performed by an employee for his employer ..." 26 U.S.C.A. Section 3401(a). Although often included in the definition of "wage," the word "bonus" is defined as "money or equivalent given in addition to usual compensation." WEBSTER'S NEW INTERNATIONAL DICTIONARY 252 (3d ed.1993). It is clear from all of these definitions that the terms "wages" and "bonuses" imply a regular employment relationship. A person of ordinary intelligence would understand these words and be familiar with their use in the above context.

Although Peterson received payment for his woodcrafts, this payment was not a wage or a bonus. Peterson did not have an employment relationship with those who purchased the woodcrafts. Peterson worked for himself and sold the woodcrafts for his own independent profit. There is no evidence that Peterson received payment under the terms of a contract or on a regular consistent basis from a separate employer. The transaction with the purchaser was limited to the sale of the finished project. The only funds that qualified as a wage or bonus were the monthly

deposits from the state payroll, which the attorney general properly excluded from his assessment of Peterson's assets.[5]

## III.

Peterson argues that he was entitled to a pre- or post-deprivation hearing upon the trial court freezing his assets to contest the attorney general's finding of good cause to file the petition. Peterson further argues that because the MIRA did not provide for this hearing, the statute violated his due process rights under the federal Fourteenth Amendment and article I, section 10 of the Missouri Constitution.

■ To determine what process is due in a particular case, a court determines whether the plaintiff was deprived of a property or liberty interest and, if so, whether the procedures followed were sufficient to satisfy constitutional due process requirements. *See Jamison v. Dept. of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 405 (Mo. banc 2007). Peterson has a protected property interest in his inmate account. Therefore, the only issue is whether the procedures in this case sufficiently satisfied due process requirements.

■ Under both the federal and state constitutions, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Jamison*, 218 S.W.3d at 405. "This does not mean that the same type of process is required in every instance; rather, due process is flexible and calls for such procedural requirements as the particular situation demands." *Id.*

In some situations, specifically attachment proceedings, a preseizure judicial hearing upon notice to the defendant may not be required so long as "the potential for harm to the defendant is slight and the statute advances legitimate state interests in providing ex parte preliminary relief." *Phillips v. .Hasty*, 775 S.W.2d 191, 194 (Mo.App.1989) (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 607, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)). In this case, a constitutional accommodation of the conflicting interests are met so long as the seizure is preceded by a factual showing of probable cause to a judicial officer, the party furnishes adequate security, and there is an adversarial proceeding promptly after seizure occurs. *See Phillips*, 775 S.W.2d at 194.

■ The procedure in the MIRA for reimbursement is similar to an attachment proceeding. The MIRA provides that the state has an interest in the assets of an offender for the purposes of reimbursement if the offender's funds meet a threshold requirement. *See* section 217.831.3. The seizure of the assets prior to judgment is intended to protect and maintain the assets until the resolution of the proceedings. *See* section 217.837.2.

Prior to any pre-judgment seizure, the attorney general must file a petition alleging that he has good cause to believe that the offender has assets subject to reimbursement. Section 217.835.1. After receiving this petition, the court, upon request, can appoint a receiver and freeze the assets. Section 217.837.2. Although the attorney general is not required to post bond, the appointment of a receiver to hold the funds pending the resolution of the proceedings provides the offender with

**5.** It is not the Court's role to determine whether the distinction between money earned through employment and money earned for independent profit is appropriate, only whether the statutory language is sufficiently clear to a person of ordinary intelligence.

adequate security that his funds will not be depleted prior to final resolution. Further, at the time of the appointment of the receiver, the court must issue an order to show cause as to why the petition should not be granted, providing the offender with notice and an immediate opportunity to challenge the petition. *See* section 217.835.2.

 Even though the MIRA does not provide for a hearing prior to the seizure of the assets and appointment of a receiver, the statutory procedure provides offenders with adequate due process. Peterson was given an opportunity to be heard at a reasonable time and manner prior to any permanent deprivation.

## IV.

Peterson claims the trial court erred in granting summary judgment because the attorney general failed to satisfy the good cause requirement of section 217.831.3, a condition precedent to filing the petition, so that the petition is void. The attorney general argues that the state is not required to prove good cause to obtain reimbursement and the trial court has no authority to review the attorney general's finding of good cause.

### a.

 Section 217.831 dictates the procedure the attorney general must follow prior to filing a petition for reimbursement, beginning with an investigation of an offender and his or her assets for the purpose of seeking reimbursement. Section 217.831.2. After the completion of the investigation, the attorney general may file a petition for reimbursement against an offender if he has

> ... good cause to believe that an offender ... has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period....

Section 217.831.3.

 The requirement that the attorney general have good cause to believe that the reimbursement action will yield a certain recovery is a condition precedent to filing the petition. *See State ex rel. Nixon v. Koonce*, 173 S.W.3d 277, 283–85 (Mo.App.2005); *State ex rel. Nixon v. Watson*, 204 S.W.3d 716, 720 (Mo.App.2006). If the condition is not met, the attorney general does not have the authority to seek reimbursement. *Id.* The purpose of this requirement is not to provide a defense for offenders to a petition for reimbursement, but is intended as a cost-effective limitation on the attorney general's authority. *Id.* The attorney general can only seek reimbursement if there is an expectation of reasonable return. *Id.*

 Nevertheless, offenders can challenge the attorney general's finding of good cause and the trial court may review the sufficiency of the evidence to determine whether this requirement is satisfied. *See State ex rel. Nixon v. Houston*, 249 S.W.3d 210, 211–13 (Mo.App.2008).[6] If the

---

**6.** In *Houston*, the court, in finding that offenders can challenge the good cause determination to file the petition, stated that the offender may assert "a claim that the court lacks jurisdiction to hear the petition because the condition precedent to the filing of the action was not met." *State ex rel. Nixon v.*

*Houston*, 249 S.W.3d at 214 (Mo.App.2008). Although the Court agrees with the conclusion that an offender may challenge the attorney general's finding of good cause, the Court rejects the assertion that this challenge is related to the jurisdiction of the court to hear the case. Rather, it is a condition precedent

offender raises a factual issue as to the existence of sufficient assets, the offender is entitled to an evidentiary hearing on whether or not good cause exists.

Because Peterson challenged the good cause to file the petition in the show cause order, the trial court had the authority to review the sufficiency of the evidence.

### b.

On appeal from summary judgment, the propriety of summary judgment is purely an issue of law and the appellate court review is essentially de novo. *See ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Court will review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* The Court looks to the entire record to determine if there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *See Dial v. Lathrop R–II School Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994).

To prevail on summary judgment, the attorney general would need good cause to believe that at least $2,800.00 would be recovered.[7] When the attorney general filed the petition, Peterson had $1,770.65 in his inmate account. However, the act does not require that these assets be in existence at the time of filing the petition, but only requires "sufficient assets" to exist. *See* section 217.831.3; *State ex rel. Nixon v. Powell*, 167 S.W.3d 702, 704–05 (Mo. banc 2005). In *Powell*, the Court found that good cause existed even though the

amount in the inmate account was less than ten percent of the cost of care because the offender had a fixed amount in his account and a monthly income of $526.00. 167 S.W.3d at 704–05.

To support a good cause belief of recovering ten percent of Peterson's cost of care, the attorney general relied on the fact that Peterson received regular deposits into his account, such that he "received $1,767.50 in deposits from October 2005 through April 2006, from sources other than wages and salary." However, the deposits in Peterson's account are different than the monthly deposit of income in *Powell.* The deposits in Peterson's account are from five individuals, who deposited different amounts at different times each month. Peterson also provided affidavits from these individuals stating that that they had no intention of making any more deposits in the future.

There is a genuine issue as to a material fact—whether the attorney general had good cause to believe that he would recover the statutory amount. Summary judgment was not appropriate. Because Peterson raised a factual issue as to the existence of sufficient assets, on remand, he is entitled to an evidentiary hearing on whether good cause exists.

### V.

The judgment is reversed, and the case is remanded.

All concur.

---

which must be met for the attorney general to proceed with the action.

7. The attorney general did not plead in the petition that the state believed Peterson to have a stream of income sufficient to pay the

amount in five years. In the petition for reimbursement and the motion for summary judgment, the attorney general only pled that the state had good cause to belief that it could recover ten percent of Peterson's cost of care.