STATE of Missouri, ex rel., Jeremiah W. NIXON, Attorney General, State of Missouri, Respondent,

v.

Bernie FARMER, Appellant.

No. WD 68322.

Missouri Court of Appeals, Western District.

Aug. 5, 2008.

Bernie Farmer, Appellant pro se, for appellant.

Paul Harper, esq., Jefferson City, MO, for respondent.

Before HOWARD, C.J., HARDWICK and WELSH, JJ.

LISA WHITE HARDWICK, Judge.

Bernie Farmer appeals from a summary judgment in favor of the State of Missouri on its Petition for Incarceration Reimbursement. For reasons explained herein, we reverse and remand for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

Farmer has been incarcerated in the Missouri Department of Corrections since 1988, serving sentences for forcible rape, first degree robbery, and armed criminal action. On October 5, 2006, the State filed a petition against Farmer seeking to recover costs for his incarceration under the Missouri Incarceration Reimbursement Act (MIRA), Sections 217.825–217.841 et seq.[1] The State alleged an estimated cost of $14,000 per year to care for Farmer. The petition also alleged there was "good cause" to believe that Farmer had sufficient assets from which the State could recover at least ten percent of the cost of his care for two years (i.e. $2,800).

The circuit court issued a Show Cause Order and Ex Parte Order appointing a receiver to secure funds in Farmer's inmate account. The State filed a Motion for Summary Judgment. Farmer filed timely responses to both the order and motion, challenging the State's allegation of good cause.

The court granted summary judgment in favor of the State, allowing recovery of $244,636.14 for the total cost of Farmer's custodial care since 1988. The court found that Farmer's inmate account had received deposits of $1,956.40, during May 2006 through November 2006, from sources other than wages and salary while incarcerated. The court ordered that 90% of the funds in Farmer's account be used to pay for his incarceration costs.

Farmer raises seven points on appeal. We will consider his jurisdictional challenge before addressing the propriety of summary judgment. Because his first point regarding the summary judgment is dispositive, we need not address the remaining points.

### JURISDICTION

Farmer contends the circuit court lacked jurisdiction to grant summary judgment because it failed to rule on his motion for change of judge and change of venue. His argument is based on Rules 51.06(b) and 51.05(e),[2] which require the trial court to promptly sustain a request for change of judge upon timely filing.

---

1. All statutory citations are to the Revised Missouri Statutes 2000, unless otherwise noted.

2. All rule citations are to the Missouri Rules of Civil Procedure (2008) unless otherwise noted.

The facts underlying Farmer's motion are somewhat confusing. The docket sheet indicates the Petition for Incarceration Reimbursement was filed on October 5, 2006. The Show Cause Order and Ex Parte Order appointing a receiver were issued and mailed to Farmer on October 11, 2006. Those orders were issued by Judge Thomas Brown, whose judicial term was set to expire on December 31, 2006. Farmer was served with the Petition on October 16, 2006.

On October 23, 2006, the docket sheet reflects that a hearing was scheduled with Judge Richard Callahan for January 22, 2007. The docket sheet does not indicate whether a notice of hearing was sent to the parties.

On November 8, 2006, Farmer filed his response to the Petition and submitted interrogatories to the State. Later in November and December, Farmer sent a letter to the court inquiring about a hearing date. The court clerk responded by faxing a copy of the docket sheet to Farmer on January 2, 2007. According to Farmer, this was his first notification that Judge Callahan had been assigned as the trial judge. The next day, Farmer filed his "Joint Application Under Rule 51.06 for Change of Venue and Change of Judge."

The case proceeded with the State's Motion for Summary Judgment, Farmer's response thereto, and various discovery motions. Judge Callahan granted summary judgment on March 5, 2007. No ruling was made on Farmer's motion for change of judge and venue.

We note that Farmer filed responsive pleadings without challenging venue before his request for change of venue was filed. As such, he waived any right to challenge venue. *Bizzell v. Kodner Dev. Corp.*, 700 S.W.2d 819, 822 (Mo. banc 1985). However, a party submitting a joint application for change of judge and change of venue may be entitled to a change of judge even if they are not entitled to a change of venue. *Breazeale v. Kemna*, 854 S.W.2d 631, 632 (Mo.App. 1993).

Rule 51.06 provides for the joint filing of change of judge and venue motions. The circuit court must grant the motion for change of judge if timely filed and no such application has been previously made by the party requesting relief. Rule 51.05(b) sets forth the deadlines for timely filing of a motion for change of judge when the motion is not for cause. It requires filing "within 60 days from service of process or 30 days from the designation of the trial judge, whichever time is longer." Rule 51.05(b). Based on this rule, Farmer contends his motion for change of judge was due within thirty days of January 2, 2007, the date when he first learned of Judge Callahan's assignment to his case.

Farmer's argument assumes that the filing requirement in Rule 51.05(b) is triggered by notice to the parties of a change in judge.[3] Prior to 1997, a previous ver-

---

**3.** In reviewing the plethora of cases addressing the timeliness of a motion for change of judge, we have found only one instance where a party has raised the precise question Farmer poses here-i.e. whether *notice* to the parties of a change in the designated judge triggers the thirty-day period for filing-but this court decided the case on different grounds. *State ex rel. Stickelber v. Nixon*, 54 S.W.3d 219 (Mo.App.2001)(trial court had no jurisdiction to rule on a change of judge motion while case was on appeal). The designation of a new judge to a case triggers the thirty-day provision, but prior cases have focused on when "designation" occurs. See e.g. *State ex rel. Delgado v. Merrell*, 86 S.W.3d 468 (Mo. App.2002) (judge is not "designated" while out of office but is re-designated when he takes office again); *State ex rel. Hagler v. Seay*, 907 S.W.2d 786 (Mo.banc 1995)(judge

sion of Rule 51.05(b) included a notice provision:

> The application [for change of judge] must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due. If no answer is required to be filed, the application must be filed no later than thirty days after the filing of the civil action. If the trial judge is not designated at the time the answer is due or, if no answer is due, within thirty days after the filing of the civil action, the application must be filed no later than thirty days after the designation of the trial judge and *notification to the parties or their attorneys.*

(emphasis added). The current rule has no such notification provision and, thus, we are bound to assume the legislature intended to exclude it. *Harrison v. King*, 7 S.W.3d 558, 562 (Mo.App.1999).

In this case, Judge Callahan was "designated" as the trial judge on the docket sheet on October 23, 2006. Rule 51.05 permitted the parties to seek a change of judge within thirty days of Judge Callahan's designation or within sixty days of service of process. Farmer's motion for change of judge was due sixty days from his service of process on October 16, 2006, since that was the longer time frame available under the Rule. Because Farmer did not file his motion until January 3, 2007, he was not entitled to relief. The court's jurisdiction was not affected by its failure to rule on an untimely request for change of judge. *Rustco Prods. Co. v. Food Corn, Inc.*, 925 S.W.2d 917, 921 (Mo.App.1996). Point denied.

### SUMMARY JUDGMENT

■ Pursuant to Section 217.831, the State can seek reimbursement for incar-ceration costs if it has good cause to believe that an offender has sufficient assets to allow recovery of not less than 10% of the estimated cost of his care for two years. The existence of good cause is a condition precedent to filing a MIRA petition. *State ex rel. Nixon v. Koonce*, 173 S.W.3d 277, 283–85 (Mo.App.2005). If the condition is not met, the State cannot seek reimbursement. *Id.* at 283–84. This threshold requirement serves as a cost-effective limitation on the State's authority to seek reimbursement only when there is an expectation of reasonable return. *Id.* at 284

■ Farmer contends the circuit court erred in granting summary judgment on the MIRA claim because the State failed to present evidence to satisfy the good cause requirement. The State presented inmate account records showing that Farmer had received $1,956.40 in deposits, during the period of May 2006 through November 2006, from sources other than wages and salary while incarcerated. Farmer argues this evidence was insufficient to prove the State could recover at least $2,800, the amount equivalent to 10% of his estimated cost of care for two years.

An appellate court reviews a summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). To prevail on a summary judgment motion, the moving party must show that: "(1) there was no genuine dispute as to the material facts on which he relies for summary judgment; and (2) based on those facts, he was entitled to judgment as a matter of law." *Parshall v. Buetzer*, 121 S.W.3d 548, 553 (Mo.App.2003). In this

became the designated trial judge when he became the judge of the division to which the case had been assigned); *Cover v. Robinson,*

224 S.W.3d 36 (Mo.App.2007)(judge was designated when the judicial transfer order was "filed" with the circuit court).

case, Farmer contends summary judgment was inappropriate because there was a genuine factual dispute as to whether the State had good cause to believe it could recover the minimum amount necessary to proceed under MIRA.

As noted, the State sought to meet the good cause requirement by showing that Farmer had $1,956.40 deposited in his inmate account between May 2006 and November 2006. The State also alleged that Farmer received "regular deposits in his inmate account." To demonstrate good cause, the State did not have to prove there was at least $2,800 in the account at the time the MIRA petition was filed but, rather, that Farmer had sufficient assets from which the amount could be collected within the statutory period, such as an existing amount in the account and a regular stream of income. *State ex rel. Nixon v. Powell,* 167 S.W.3d 702, 705 (Mo. banc 2005).

In his response to the summary judgment motion, Farmer presented an affidavit and documents to counter the State's inference that he had sufficient funds to allow incarceration reimbursement of at least $2,800 during a two-year period. The affidavit was from John Galotto, a retired professor, who stated that he gave Farmer $1,225 on September 27, 2006, to pay tuition for two college courses approved by prison administrators. Galotto stated that he would not send such tuition gifts in the future due to the State's attempt to recover Farmer's assets. Farmer also presented interrogatory responses wherein the State admitted that it regularly waives incarceration reimbursement as to any funds being used for approved college classes. The State further admitted that it had allowed Farmer to use the $1,225 for tuition payments, and, thus, the funds were not available for purposes of incarceration reimbursement. With the

exclusion of the tuition funds, Farmer had only $731 deposited in his account, during a seven-month period, from sources other than wages and salary. Farmer's evidence was sufficient to show a factual dispute as to whether he would have at least $2,800 available for incarceration reimbursement during a two-year period.

This case is similar to *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 83–84 (Mo. banc 2008), where the State asserted good cause under MIRA based on $1,767.50 in deposits to the offender's account, during a seven-month period, from sources other than wages and salary. The offender disputed the sufficiency of these funds to allow incarceration reimbursement of at least $2,800 during a two-year period, because the deposits in his account were gifts from five individuals who did not intend to make future deposits. *Id.* at 84. The court found that the offender had presented a genuine issue of fact as to whether the State had good cause to believe it could recover the statutory amount. *Id.* The court reversed a summary judgment ruling in favor of the State and remanded the case for hearing on the disputed issue of good cause. *Id.* The court explained the proper procedure under Section 217.831, which is also applicable in Farmer's case:

> [O]ffenders can challenge the [State's] finding of good cause and the trial court may review the sufficiency of the evidence to determine whether this requirement is satisfied. If the offender raises a factual issue as to the existence of sufficient assets, the offender is entitled to an evidentiary hearing on whether or not good cause exists.

*Id.* at 83–84 (internal citations omitted).

## CONCLUSION

Summary judgment was improper because there was a genuine issue of fact as to whether the State had good cause for

seeking incarceration reimbursement. Farmer is entitled to a hearing where the circuit court can review the sufficiency of the evidence to determine whether the good cause requirement has been met. *Id.* The judgment is reversed, and the cause remanded to the circuit court.

All Concur.