**STATE of Missouri, ex rel. Jeremiah W. NIXON, Missouri Attorney General, Appellant,**

v.

**Ronald SMITH, Respondent.**

**No. WD 69547.**

Missouri Court of Appeals, Western District.

April 7, 2009.

Shaun J. Mackelprang and Paul Harper, Jefferson City, MO, for appellant.

F. Randall Waltz, III, Jefferson City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J.,[1] HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

The State of Missouri, through the Attorney General, appeals the judgment granting Ronald Smith's motion to dismiss its petition under the Missouri Incarceration Reimbursement Act. The trial court determined that the Attorney General lacked good cause to file the petition because the State could not reasonably have believed that it could recover at least

---

1. Judge Dandurand participated in the case at the time of submission. He left the court after submission and before handdown. Jeremiah W. Nixon was Attorney General at the time of submission. He has since been replaced in that office by the present Attorney General, Christopher Koster.

$3,000 from Smith within five years of filing. The judgment is reversed and the case is remanded.

### Facts

This matter was before the trial court under the Missouri Incarceration Reimbursement Act ("MIRA").[2] The Attorney General filed a petition seeking reimbursement from Ronald Smith for the cost of his incarceration.

Before filing the petition, the Attorney General investigated Smith's assets. The Attorney General reviewed Department of Corrections records, including records of Smith's inmate account. The Attorney General also checked commercial databases and information from the Division of Employment Security concerning the purported donors of cash gifts to Smith.

The Attorney General found that deposits of $4,400 were made in Smith's inmate account within ten months. The deposit records showed only the name of the person depositing the money and did not identify the source of the funds. The Attorney General thought the deposits were not typical of an offender without assets. The Attorney General believed that inmates often arrange to send their own funds to themselves through other people.

The Attorney General discovered that Smith's deposits primarily came from three people: his mother, his ex-girlfriend, and another depositor purporting the bear the name John Bickell. The Attorney General was suspicious that the funds had some other actual source, because employment security records concerning Smith's mother and girlfriend showed that they earned only $16,000 and $11,000 per year, respectively. The Attorney General could not identify or locate an individual named John Bickell.

The Attorney General has developed basic rules of thumb concerning offender deposits. When an offender receives more than a certain amount per year from one donor source or more than another specified amount in one year from multiple donor sources, the offender receives closer scrutiny. As the Attorney General evaluated Smith's information with a view to whether it should be pursued, the Attorney General believed it would be likely that the State could collect $3,000 from Smith over a period of five years.

The Attorney General filed a MIRA petition, and the court issued a show cause order and *ex parte* order appointing a receiver. At the time of filing, Smith had $1,800 in his inmate account. Smith filed an answer. Shortly thereafter, Smith filed a motion to dismiss, alleging that the Attorney General did not have "good cause" to file the petition. At the hearing on the motion to dismiss, Ms. Jodi Caplinger testified in behalf of the Attorney General's office as to the foregoing investigation. Caplinger was the only witness who testified at the hearing; Smith presented no evidence. Ms. Caplinger testified as to why it seemed likely that the payments received by Smith were not gifts but were, instead, elements of a stream of income from an undetermined asset. The trial court nevertheless granted Smith's motion to dismiss and entered judgment for Smith and against the State. Its relevant findings included:

> In the ten months prior to filing, Smith had received deposits from a number of different persons into his inmate account totaling $4,490.55.

---

**2.** The Missouri Incarceration Reimbursement Act is found at sections 217.825 through 217.841, RSMo 2000. It authorizes the State to seek to secure reimbursement from a current or former offender for the expense of the State for the costs of care incurred while the offender is or was maintained in a state correctional facility.

After review of the Division of Employment Security records of the identifiable persons who sent money, the Attorney General's staff concluded that the amount of the deposits was not typical for a person with that reported income and that Smith probably had an outside source of income. No evidence was presented that these persons were contacted by the Attorney General or that any other investigation into these deposits was made.

The Attorney General could not identify from whom and when the Defendant would collect an additional $1,200.00.

To enter judgment in a MIRA case, the court must be able to identify the asset such as [so that] it could enter an order requiring the possessor or custodian of such asset to appropriate and apply such asset to the claim of the State.

The Attorney General's Office lacked good cause to file the MIRA petition as it could not have reasonably believed that it could recover at least $3,000.00 from Smith within five years of filing.

The State appeals.

### Standard of Review

This court will affirm the judgment in a judge-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Questions of law are reviewed *de novo. Leung v. Fu*, 241 S.W.3d 838, 839 (Mo. App.2007). Here, the basic facts are agreed. The parties do not agree on the reasonable inferences to be drawn from the facts.

### Jurisdiction

■ Smith states that this appeal should be dismissed for lack of jurisdiction. He argues that the judgment granting the motion to dismiss is not a final, appealable judgment because the Attorney General has the right to re-file the petition in the same court. Smith claims that the proper remedy is for the Attorney General to re-file the MIRA petition and states that nothing is preventing the re-filing of the petition.

■ "Ordinarily, when an action is dismissed without prejudice, a plaintiff may cure the dismissal by filing another suit in the same court, and, therefore, a dismissal without prejudice is not a final judgment for the purpose of appeal." *State ex rel. Dos Hombres–Independence, Inc. v. Nixon*, 48 S.W.3d 76, 79 (Mo.App. 2001). "An exception to this general rule is that an appeal can be taken where the dismissal has the practical effect of terminating the litigation in the form presented by the plaintiff." *Id.* "If the effect of the trial court's dismissal is to dismiss the cause of action and not merely the pleading, then the dismissal was final and appealable." *Id.* "If the dismissal was such that a refiling of the petition at that time would be a futile act, then the order of dismissal is appealable." *Id.*

While technically the Attorney General could re-file the case, the Attorney General notes that he would be relegated to pleading the same facts. The trial court would again dismiss the case. The Attorney General states that, without having a case pending so as to be able to engage in formal discovery, he does not have access to additional facts, because none of the individuals who possess information about the sources of Smith's funds is likely to voluntarily cooperate with the Attorney General. Smith offers no argument or information indicating that the Attorney General could, through investigation or informal discovery apart from a pending case, gather additional information. Therefore, it seems that the Attorney General is correct that the judgment effectively terminates the litigation such that it

should be regarded as a final judgment. *Duvall v. Lawrence,* 86 S.W.3d 74, 82–83 (Mo.App.2002).

## Analysis

The Attorney General argues that the trial court erred in determining that he lacked good cause to file the MIRA petition against Smith. Section 217.831 indicates the procedure the Attorney General is to follow prior to filing a petition for reimbursement. Subsection 1 of that statute provides that the Director of the Department of Corrections "shall forward" to the Attorney General a completed form prescribed by section 217.829, together with "all other information available on the assets of the offender." Subsection 2 then states that the Attorney General "may investigate or cause to be investigated" all reports so furnished. Subsection 3 states that if the attorney general "upon completing the investigation" has "good cause" to believe that an inmate has sufficient assets or sufficient stream of income (as defined, respectively, by the statute), the attorney general may seek reimbursement.

"The requirement that the attorney general have good cause to believe that the reimbursement action will yield a certain recovery is a condition precedent to filing the petition." *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 83 (Mo. banc 2008). "If the condition is not met, the attorney general does not have the authority to seek reimbursement." *Id.* "The purpose of this requirement is not to provide a defense for offenders to a petition for reimbursement, but is intended as a cost-effective limitation on the attorney general's authority." *Id.* The Attorney General is to seek reimbursement only if there is an expectation of reasonable return. *Id.*

"Nevertheless, offenders can challenge the attorney general's finding of good cause and the trial court may review the sufficiency of the evidence to determine whether this requirement is satisfied." *Id.* "If the offender raises a factual issue as to the existence of sufficient assets, the offender is entitled to an evidentiary hearing on whether or not good cause exists." *Id.* at 83–84. When faced with a claim that good cause is lacking, the burden shifts to the Attorney General to demonstrate that the State conducted the investigation contemplated by section 217.831.2 and .3, and that good cause existed. *State ex rel. Nixon v. Houston,* 249 S.W.3d 210, 214 (Mo.App.2008). Cases discussing an offender's challenge to "good cause" indicate that the trial court has authority to review the sufficiency of the evidence supporting the good cause termination. *See, e.g., Peterson,* 253 S.W.3d at 84. The inmate should also be entitled to present evidence showing that there was information available to the Attorney General that would have (if considered) demonstrated that there was not "good cause" for filing the petition. After the hearing, the court is to decide only that whether the attorney general had "good cause to believe the inmate has sufficient assets and/or income." *Houston,* 249 S.W.3d at 212.

The Attorney General argues that the trial court erred in finding insufficient "good cause" to file the MIRA petition, because the court did not base its judgment on the information reasonably available to the Attorney General at the time of the determination. The Attorney General also argues that a reasonable person would believe that this offender likely had sufficient assets to allow the State to recover the statutory minimum.

Regarding the specific deposits into Smith's inmate account, the facts at the hearing indicated that the deposits primarily came from three different people—his mother, who sent $1,200; his ex-girlfriend, who sent $1,200; and John Bickell, who

sent $1,800. Upon reviewing the Employment Security information on Smith's mother and ex-girlfriend, the Attorney General found that their earnings amounted to $16,000 and $11,000 per year, respectively. The Attorney General could find no information as to the location or identity of John Bickell. The Attorney General thought it unlikely that Smith's mother and ex-girlfriend could afford the substantial gifts made to Smith.

The trial court seemed to base its ruling on the fact that the Attorney General could not identify "from whom and when" future amounts would be received. The court said that the Attorney General must be able to "identify the asset" which would generate future payments so that the possessor of that asset could be ordered to direct the payments to the State. Because the Attorney General could not identify such asset, and could say only that it seemed unlikely that the putative donors in question were the actual source of the funds, the Attorney General did not, in the court's view, have "good cause" to proceed. The court, in effect, supposed that the amounts deposited were likely gifts that would terminate (in the event of a MIRA proceeding) and were not indicators of an undetermined "stream of income." The court thus assumed that there was no flow of income that would produce another $1,200 of receipts within the next five years (if the MIRA proceeding was permitted to continue) so as to allow recovery of a total of $3,000 or more within five years.

In the ten months prior to the Attorney General's filing, Smith had received deposits of $4,490.55. At the time of filing, Smith had $1,800 in his inmate account. The Attorney General says there was reason to believe that the funds actually represented a "stream of income" flowing from an asset, but that this could not be verified outside of litigation because the

Attorney General has no power to compel people to answer questions without being able to conduct discovery in pending litigation.

 The term "good cause" is not defined in the Act, but the term "good cause" is a familiar one as it is used generally in statutes and court rules in Missouri. "In construing a statute it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times." *Citizens Elec. Corp. v. Dir. of Dep't of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989). "When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." *Id.* Also, when a term is not defined in an enactment, but has a recognized common law meaning, it will be understood that the General Assembly intended to employ that meaning. *See Morgan v. Gaeth,* 273 S.W.3d 55, 59 (Mo.App.2008).

 "Good cause" seems to generally involve the concepts of good faith and objective reasonableness. *Wilson v. Morris,* 369 S.W.2d 402, 407 (Mo.1963); *see also Am. Family Ins. Co. v. Hilden,* 936 S.W.2d 207, 210 (Mo.App.1996) (in the employment security context, the phrase involves an objective standard of reasonableness). "Good cause has been defined as 'a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances.'" *Reisdorph v. Div. of Employment Sec.,* 8 S.W.3d 169, 172 (Mo. App.1999). Reasonableness is an objective concept incorporating an element of discretion. *See Wilson v. Morris,* 369 S.W.2d

402, 407 (Mo.1963); *See also State ex rel. Nixon v. Koonce,* 173 S.W.3d 277, 284 (Mo.App.2005) (Attorney General must reasonably believe that the offender has sufficient assets to justify the use of the State's resources to recover them).

■ The official determining good cause must consider all of the pertinent information available at the time of the determination. *Haynes v. Williams,* 522 S.W.2d 623, 626–28 (Mo.App.1975) (finding a lack of good cause where the official did not consider all the information available). At the same time, the official need consider only the information that is reasonably available. *See Burditt v. Dir. of Revenue, State of Mo.,* 962 S.W.2d 426, 428 (Mo.App. 1998) (court would not consider evidence that was not available to the Director of Revenue when she made the good cause determination pursuant to section 302.291).

■ One question not specifically answered by the statute is the extent to which the Attorney General in any given case may have a duty to do more than simply view the financial records forwarded by the Department of Corrections pursuant to 217.829. The trial court here seemed to believe that the Attorney General, before filing the case, could and should have conducted further investigation of Smith's mother and ex-girlfriend, presumably in the form of attempts at informal interviews. The Attorney General suggests respectfully that such an effort is not required, and, in any event, would not have been productive. Section 217.831 states in pertinent part:

1. The director shall forward to the attorney general a report on each offender containing a completed form pursuant to the provisions of section 217.829 together with all other information available on the assets of the offender and an estimate of the total cost of care for that offender.

2. The attorney general may investigate or cause to be investigated all reports furnished pursuant to the provisions of subsection 1 of this section. *This investigation may include seeking information from any source that may have relevant information concerning an offender's assets.* The director shall provide all information possessed by the department and its divisions and agencies, upon request of the attorney general, in order to assist the attorney general in completing his duties pursuant to sections 217.825 to 217.841.

3. If the attorney general upon completing the investigation under subsection 2 of this section has good cause to believe that an offender or former offender has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period, the attorney general may seek to secure reimbursement for the expense of the state of Missouri for the cost of care of such offender or former offender. (Emphasis added.)

The statute does not specifically *require* investigative activities beyond review of the Department's records before filing the action. For this reason, we are not prepared to say as a matter of law that the attorney general is required to conduct interviews or engage in other forms of investigation before filing. Accordingly, to the extent that the trial court created a requirement of such additional investigation, the court erred.

The Attorney General needed to demonstrate only a reasonable and good faith belief based on facts reasonably available to him that Smith had sufficient "assets" so that the State would, within five years,

receive a total of $3,000. The Attorney General has developed general guidelines concerning total deposits in one year into an inmate account. There are certain levels of deposits that the Attorney General regards as creating no inference of a stream of income flowing from an asset. There are other levels of deposit that raise an inference that something is occurring beyond gifting from family and friends. The Attorney General here acted within his own guidelines. At the time of filing, over $4,400 had been deposited into his inmate account over the course of ten months.

In *State ex. rel. Nixon v. Koonce*, 173 S.W.3d 277 (Mo.App.2005), the Attorney General established good cause by showing deposits into the inmate's account consisting of $230 monthly from May of 2003 to January 2004 (for a total of $1,610 in a seven-month period). *Id.* at 279. There is nothing in *Koonce* or any other case we have found requiring the Attorney General to "identify the asset." Here, knowing that an offender has received $4,400 over a period of ten months, $2,400 of which came from people of limited means, a reasonable person *could* have a good faith belief that an offender has sufficient assets that the State would recover at least $3,000 in five years from the action.

■ The statute does not require that the attorney general identify the asset allegedly generating the income. To the extent that the trial court determined as a matter of law that the attorney general was required to identify "the asset" and the possessor of the asset allegedly generating the funds in question, the trial court erred.

We understand that the trial court may be concerned that, unless the Attorney General can identify a particular asset and the custodian of that asset, the State may "nickel and dime" the inmates, especially inmates receiving only voluntary gifts.

The court seems, in effect, to take issue with the Attorney General's guidelines and practices. The court's authority is limited, however. This action does not arise from the common law, but from statute. While the trial court's view is not without practical value, and is presumptively worthy of consideration by the Attorney General, the "good cause" determination remains subject to the good faith judgment of the of the Attorney General rather than the view of the court. The Attorney General is charged with the responsibility of exercising objectively reasonable judgment in good faith, keeping in mind the language and purposes of the MIRA statute, the economic realities of the inmate's circumstances, and the cost of litigation to the State, and all, perhaps, in light of the rehabilitative and other purposes of the State's correctional system. The General Assembly has delegated this specific decision making authority to the Attorney General. The General Assembly can revise the parameters of that grant of authority whenever it deems it to be proper to do so, but it has not done so at this point.

We conclude that the trial court erred in determining as a matter of law that the Attorney General was required, before filing the action, to conduct additional investigative activities. Nor can we say that the Attorney General was required, before filing, to identify a specific asset that would be expected to produce the funds necessary to reach the statutory minimum amounts, and the custodian of that asset. The statute does not impose such specific requirements on the Attorney General. We also cannot say that the Attorney General proceeded in bad faith or that the Attorney General's decision in this case was so clearly unreasonable in light of the pertinent purposes that we could say that there was a lack of "good cause."

## Conclusion

The judgment of dismissal is reversed and the case is remanded for further proceedings.

LOWENSTEIN, J. concurs.

DANDURAND, J., not participating at the time of handdown.